IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiffs,<br><br>    vs.<br><br>ROSS RIVERA,<br><br>                Defendant. | 8:14CR283<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the Findings and Recommendation (Filing No. 69) issued by Magistrate Judge F.A. Gossett recommending that the Motion to Suppress (Filing No. 42) filed by Defendant Ross Rivera ("Rivera") be denied. Rivera filed an Objection to the Findings and Recommendation (Filing No. 80). The Government did not respond to Rivera's Objections. For the reasons stated below, the Findings and Recommendation will be adopted and the Motion to Suppress will be denied.

## FACTUAL BACKGROUND

      The Indictment (Filing No. 1) charges Rivera with possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Rivera seeks to suppress any statements he made to law enforcement on July 11, 2014.

      On July 11, 2014, North Platte Police Officer Rick Harms ("Harms") approached Rivera after Rivera exited a Dodge Durango, which he was driving with Defendant Sheena Strand ("Strand") as a passenger. Harms testified that he had received a "be on the lookout" notice ("BOLO") about a black Dodge Durango (the "Durango") with expired

Colorado in-transit tags. On July 8, 2014, Harms learned that Timothy Casillas ("Casillas") had loaned the vehicle to Rivera and Strand, and he was trying to get the vehicle back from the them but had been unsuccessful. Harms, while on duty, observed the vehicle he believed was the Durango. At the time Harms observed the Durango, it had Nebraska dealer plates registered to Spady Motors, a dealership in North Platte, Nebraska. The dealer plates not been reported as stolen. At the time he observed the vehicle, Harms believed the driver to be Rivera. Harms had previous interactions with Rivera and had arrested Rivera on multiple occasions.

Harms followed the Durango to the area of 1221 W. 6th St. in North Platte, Nebraska. After stopping his cruiser, Harms rolled down his window and asked Rivera, "Are you Ross Rivera?" He then asked about the Durango. Harms testified that Rivera responded that it belonged to Casillas. Harms asked Rivera about the dealer plates. Harms testified that Rivera responded that Casillas put them there. Harms did not read Rivera his Miranda rights after he first questioned Rivera, nor did Harms read Rivera his Miranda rights when asking him about the Durango.

Harms determined that he would seize the dealer plates. When Harms went to the rear of the Durango to remove the rear plate, Harms testified that Rivera admitted that Rivera had put the plates on the vehicle. Harms also testified that when he stooped down to remove the license plate, he remarked to Rivera that Harms smelled burnt marijuana. Harms had not received prior training or testing to smell marijuana in or outside of a closed vehicle. Harms testified that Rivera then admitted to smoking marijuana earlier in the vehicle. Harms did not smell marijuana on Rivera.

Based upon the odor of burnt marijuana, Harms instructed Rivera to unlock the Durango's doors. Before the doors were unlocked, Harms viewed a copper colored marijuana pipe in plain view through the Durango's window. The Durango's doors were then unlocked, and a door was opened. Harms testified that when the door was opened, "there was an overwhelming smell of burnt marijuana." (Tr., Filing No. 81 at 15:21-23.) Harms then searched the Durango.

Harms seized the marijuana pipe. He also observed, what appeared to him based upon his training and observation, a methamphetamine pipe. Harms observed a packet of miniature Ziploc bags in the center console. Harms asked Rivera about the methamphetamine pipe and testified that Rivera admitted to using the pipe earlier to smoke methamphetamine. Harms continued his search and found a clothing bag. At the bottom of the clothing bag Harms found a large package of a substance that, based upon Harms's training, appeared to be crystal methamphetamine.

Judge Gossett determined that Harms's testimony was credible. Judge Gossett also determined that Rivera's initial encounter with Harms was consensual, and that the encounter became a valid investigative detention based upon Rivera's admission that he was smoking marijuana in the Durango, and the marijuana pipe in plain view. Finally, Judge Gossett determined that up until the point that Harms began to search the vehicle, Rivera was free to leave.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which a Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's

findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

### I. Credibility of Officer Harms

Rivera argues that Harms's testimony was not credible. On review, the Court must determine whether Harms's testimony was "so implausible that a reasonable fact-finder would not credit the testimony." *United States v. Portmann*, 207 F.3d 1032, 1033 (8th Cir. 2000). Rivera appears to argue that Harms's testimony is implausible because Harms omitted from his police report: (1) the word "burnt" regarding the smell of marijuana and (2) any mention of the dealer plates. The Court concludes that these omissions from Harms's report did not render his testimony implausible. Neither of these facts was essential to Judge Gossett's conclusion, nor are they essential to evaluate whether Harms's search of the vehicle was justified. It cannot be said that Harms's testimony in this respect was so implausible that no reasonable fact-finder would credit his testimony.

Rivera also argues that Harms's testimony was not credible because Harms testified that he could smell burnt marijuana outside a closed vehicle, but could not smell marijuana on Rivera. Rivera rhetorically questions why drug dogs are necessary if Harms has the ability to smell marijuana outside of a vehicle. However, Harms's credibility is a separate question from whether Harms could rely on his own sense of smell to justify a search of the vehicle. Harms testified that when he stooped down at the rear of the Durango he made the statement, "I can smell marijuana. I can smell burnt marijuana." (Tr. 75 at 15:5-6.) Harms testified that Rivera immediately confirmed

4

that he had been smoking marijuana earlier inside the Durango.  (Tr. 75 at 15:6-8.) There is nothing so implausible about this statement that renders Harms's testimony not credible. Accordingly, Judge's Gossett's credibility determination was not erroneous.

## II.     Consensual Encounter or Fourth Amendment Seizure

Rivera argues that Judge Gossett erred in concluding that Rivera's initial contact with Harms was consensual and argues that a reasonable person in Rivera's position would not have felt free to leave.  "A consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is 'so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave.'" *United States v. Flores–Sandoval,* 474 F.3d 1142, 1145 (8th Cir. 2007) (quoting *United States v. Hathcock,* 103 F.3d 715, 718 (8th Cir. 1997)). "Although the Fourth Amendment prevents police from seizing a person without a reasonable suspicion of criminal activity, the Amendment is not triggered by a consensual encounter between an officer and a private citizen." *United States v. Villa-Gonzalez*, 623 F.3d 526, 531 (8th Cir. 2010) (citing *United States v. Griffith,* 533 F.3d 979, 983 (8th Cir. 2008)). "[M]ere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434 (1991).

Rivera argues that a reasonable person under the circumstances would not feel free to leave because Harms called Rivera by name and had previously arrested Rivera.  However, "[e]ven when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not

5

been seized." *Villa-Gonzalez*, 623 F.3d at 531 (quoting *United States v. Angulo–Guerrero,* 328 F.3d 449, 451 (8th Cir. 2003)). The Supreme Court has stated that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado,* 466 U.S. 210, 216 (1984). Rivera has not demonstrated that his initial encounter with Harms was involuntary. The Eighth Circuit has expressly stated, "[i]t is 'clearly' not a seizure, for example, for an officer to approach an individual in a public setting, identify himself as a police officer, and ask the individual to step aside and talk to detectives." *United States v. Vera*, 457 F.3d 831, 834-35 (8th Cir. 2006) (quoting *Florida v. Rodriguez,* 469 U.S. 1, 5–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam)). Harms asked Rivera whether or not he was Ross Rivera. This question did not eliminate the consensual nature of their initial interaction. Accordingly, the Court finds that Judge Gossett did not err in concluding that Rivera's initial contact with Harms was a voluntary or consensual encounter.

Rivera acknowledges that there is no case on point, but he argues that the facts of this case are analogous to those in *United States v. Villa-Gonzalez*. In *Villa-Gonzalez*, law enforcement officers told a suspect that the officers believed he was a drug dealer and failed to return the suspect's identification. 623 F.3d at 533-34. The Eighth Circuit concluded that under the totality of the circumstances, a reasonable person in the suspects' position would not have felt free to terminate the encounter with law enforcement, and the suspect was "seized" under the Fourth Amendment. *Id.* at 534.

Rivera argues that holding a suspect's identification card is analogous to asking Rivera to identify himself. Rivera implies this is so because law enforcement in *Villa-Gonzalez* could discover where the suspect lived based on the information contained on the identification card, just as Harms discovered where Rivera lived based on questioning. This argument misconstrues the Eighth Circuit's reasoning. The Eighth Circuit explained that "[w]ithout his identification card, a reasonable person is much less likely to believe he can simply terminate a police encounter." *Id.* at 533. The Eighth Circuit in *Villa-Gonzalez* held that the suspect would not feel free to leave because police possessed his identification, not because law enforcement had access to the suspect's personal information via the identification card. Accordingly, Rivera's argument is inapposite. Judge Gossett did not err in concluding that Rivera was not under arrest when Harms asked Rivera his name.

### III.   Reasonable Suspicion to Search the Durango

Rivera objects to "Judge Gossett's finding that the police officer had probable cause or reasonable suspicion to search the car." (Filing No. 80 ¶ 2.) In his brief, Rivera does not state any specific legal argument supporting this objection. See NECrimR 59.2(a) ("A party's failure to state a legal argument supporting objections to an order may be considered an abandonment of the party's objections.")  In discussing Harms's credibility, Rivera argues that

> . . . it was impossible for Officer Harms to detect the smell of marijuana in a closed Dodge Durango with the windows rolled up and the doors locked while he was standing near the back license plate. Therefore, he was not a reliable or credible witness. No further search should have been allowed. Officer Harms was not qualified to render an opinion on the smell of marijuana in a closed vehicle.

7

(Df. Br., Filing No. 81 at 18.)

Liberally construed, Rivera appears to attack the sufficiency of Harms's basis for searching the Durango. Rivera also stated in his objections, "The officer was not certified and qualified to render an opinion on the smell of burnt marijuana in a vehicle." (Filing No. 80 ¶ 3.)

Judge Gossett did not find that Harms was qualified to render an expert opinion, nor did Judge Gossett conclude that the smell of marijuana justified the search. Judge Gossett held that the search of the vehicle was justified by (1) Rivera's voluntary admission to Harms that he had been smoking marijuana in the vehicle, and (2) the marijuana pipe in plain view before the vehicle was opened. (Tr. at 51:18-53:7.) The Court likewise concludes that, based on Rivera's admission and the pipe in plain view, Harms was justified in performing a search the Durango. *See United States v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999) (stating that admission of criminal activity shortly after initiation of traffic stop supported probable cause to arrest and search a vehicle and its contents); *United States v. Van Zee*, 380 F.3d 342, 343 (8th Cir. 2004) (concluding that plain view of crack pipe supported finding of probable cause to search vehicle). Accordingly, Judge Gossett did not err in concluding that Harms had probable cause or reasonable suspicion to search the Durango.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 69), and the oral Findings and Recommendation following the evidentiary hearing (transcript at Filing No. 75), are adopted;

2. The Motion to Suppress (Filing No. 42) filed by Defendant Ross Rivera, is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 80) is overruled.

Dated this 22nd day of June, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge